UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PERVENIA "PEAR" BROWN,<br><br>Plaintiff,<br><br>v.<br><br>BRITISH PARLIAMENT, CITY OF BOSTON, COMMONWEALTH OF MASSACHUSETTS, ESTATE OF WILLIAM PIERCE, ESTATE OF JOHN WINTHROP, ESTATE OF JOHN SAFFIN, and ESTATE OF HUGH HALL,<br><br>Defendants. | Civil Action No.<br>22-11221-FDS |

### MEMORANDUM AND ORDER ON MOTIONS TO DISMISS BY THE CITY OF BOSTON AND THE COMMONWEALTH OF MASSACHUSETTS

**SAYLOR, C.J.**

This is a suit seeking damages for harm arising out of slavery. Plaintiff Pervenia "Pear" Brown is a descendant of slaves trafficked from Africa to Massachusetts. She has filed a *pro se* complaint against the British Parliament, the Commonwealth of Massachusetts, the City of Boston, and the estates of four individuals who allegedly participated in and benefited from the slave trade during the American colonial era, seeking what amounts to reparations.

The Commonwealth and the City have moved to dismiss the complaint for lack of

subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.[1]

For the reasons set forth below, the motions will be granted.

## I. Background

The following facts are set forth as alleged in the complaint.

### A. Factual Background

Pervenia "Pear" Brown is the descendant of slaves trafficked to the Massachusetts Bay Colony during the 17th century. (Compl. ¶ 2.7). She brings this suit on behalf of herself and the "descendants of the 1816 emigrants from Boston to Sierra Leone." (*Id.* ¶ 1.1).

The complaint alleges that the Royal African Company, operating under a monopoly from the British Parliament, trafficked enslaved individuals—including plaintiff's ancestors—from Africa to the Massachusetts Bay Colony beginning in 1672. (*Id.* ¶ 2.7). The Commonwealth allegedly "amassed great wealth" from the slave labor-driven economy, and raised revenue from an import duty imposed on slaves brought to Massachusetts. (*Id.* ¶¶ 2.15, 2.19-2.22). The complaint further alleges that Boston served as "one of the primary ports of departure for ships carrying enslaved people." (*Id.* ¶ 2.16).

The complaint identifies four individuals who lived and worked in Massachusetts and benefitted from the slave trade. According to the complaint, John Winthrop, founder of Boston, recorded in his journal in 1638 that slaves from the ship *Desire* had been sold. (*Id.* ¶¶ 2.1-2.2). William Pierce owned the slave ship *Desire* and "traffick[ed] enslaved people into the Massachusetts Bay Colony." (*Id.* ¶ 2.3). John Saffin was a "prominent Boston merchant and politician" who engaged in slave trading in Virginia and kept indentured servants in his

---

[1] Although the Commonwealth has moved to dismiss pursuant to Mass. R. Civ. P. 12(b)(1) and 12(b)(6), the Court will assess both motions as if brought under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

household.  (*Id.* ¶ 2.4-2.5).  And Hugh Hall was a Barbados native who was a "commission merchant in Boston" who imported slaves from Barbados to Boston.  (*Id.* ¶ 2.18).

The complaint alleges that "Defendants enjoyed, and their heirs continue to enjoy[,] the economic advantages, benefits, and profits from Plaintiff[']s ancestors' uncompensated labor."  (*Id.* ¶ 2.12).

**B.     Procedural Background**

Plaintiff filed suit in the Western District of Washington on April 16, 2022, against the British Parliament, the City of Boston, the Commonwealth of Massachusetts, and the estates of Hall, Saffin, Winthrop, and Pierce.  The case was subsequently transferred to this court.

The complaint alleges that defendants engaged in "unfair, willful misconduct, and deceptive acts and practices . . . during the course of [their] trade or commerce" that "affect[ed] the public interest" and caused plaintiff's enslaved ancestors to suffer damages.  (Compl. ¶¶ 4.1-4.3).  It further alleges that plaintiff's enslaved ancestors were deprived of civil rights, human rights, life, and liberty because of unlawful kidnapping and trafficking.  (*Id.* ¶ 4.8).  Finally, it alleges a claim of unjust enrichment for defendants' failure "to compensate Plaintiff[']s enslaved ancestors for their labor, knowledge and rice-growing expertise."  (*Id.* ¶¶ 5.1-5.2).[2]

Defendants the City of Boston and the Commonwealth of Massachusetts have moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.[3]

---

[2] Though the complaint does not label the first two counts, it appears that they are intended to assert a claim for unfair and deceptive practices, in violation of Mass. Gen. Laws ch. 93A, and a claim for violations of the Fourth and Fourteenth Amendments, brought under 42 U.S.C. § 1983.  (Boston Mem. at 2 n.2; Commonwealth Mem. at 9).

[3] There is no return of service on the docket for the estates of Pierce, Winthrop, Saffin, or Hall.  Docket entry No. 9 is an affidavit of service, signed by plaintiff herself, indicating her method of service on the British Parliament.

## II.  Standard of Review

### A.  Fed. R. Civ. P. 12(b)(1) Standard

On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).  If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted.  *Id.*  When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

### A.  Fed. R. Civ. P. 12(b)(6) Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano*

*de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.   <u>Analysis</u>**

Defendants have moved to dismiss the complaint, among other reasons, on the grounds that plaintiff lacks standing to sue; that the suit is time-barred; that the Eleventh Amendment bars suit against the Commonwealth; and that the case presents a non-justiciable political question. Because the Court finds that the complaint fails to allege an injury-in-fact sufficient to establish Article III standing, it will not reach the remaining grounds.

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases or controversies.  U.S. Const. art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  The standing doctrine serves to identify those disputes that are "appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560 (quotations and internal citations omitted).

Constitutional standing requires proof of three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (quotations and internal citations omitted).  "To be concrete, an injury must 'actually exist'; it cannot be 'abstract.'  For an injury to be 'particularized,' it must go beyond a 'generalized grievance,' to manifestly 'affect the plaintiff in a personal and individual

5

way.'" *Lyman v. Baker*, 954 F.3d 351, 360-61 (1st Cir. 2020) (alterations omitted) (first citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); then citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344, 348 (2006); and then citing *Lujan*, 504 U.S. at 560 n.1). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)," *Hochendoner*, 823 F.3d at 730.

The allegations in the complaint are not sufficient to establish that plaintiff has suffered a concrete and particularized injury within the meaning of the standing doctrine. The complaint lists various harms that were suffered by plaintiff's enslaved ancestors, including that they were kidnapped, trafficked, sold as property, forced to endure severe physical labor, denied human and civil rights, and, in many cases, died prematurely. But because it does not allege that plaintiff herself suffered any of those harms, such a claim cannot serve as the basis for standing under Article III. *See In re African-American Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir. 2006) ("When a person is wronged he can seek redress, and if he wins, his descendants may benefit, but the wrong to the ancestor is not a wrong to the descendants."); *Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."); *Patterson v. United States*, 1995 WL 714372, at *2 n.4 (N.D. Cal. Nov. 30, 1995) (descendant of slaves "lack[ed] standing to assert constitutional deprivations suffered by his ancestors").

The closest the complaint comes to stating an individualized harm is the assertion that "plaintiff[']s injury is ever-present, as Defendants enjoyed and their heirs continue to enjoy the economic advantages, benefits, and profits of Plaintiff[']s enslaved ancestors' uncompensated labor." (Compl. ¶ 5.2). But even assuming that plaintiff herself has suffered present-day harms

because of the long-term effects of her ancestors' enslavement, or because of slavery generally, that would fail to satisfy the traceability requirement under Article III. *See In re African-American Slave Descendants Litigation*, 471 F.3d at 762 (noting that it would be "impossible" for descendant of slaves "to prove injury, requiring as that would connecting the particular slavery transactions in which the defendants were involved to harm to particular slaves"). The complaint does not identify any individual ancestors who were enslaved by any of the defendants, nor does it trace defendants' specific past behavior to specific harms or disadvantages suffered by plaintiff today. And even if it did, such a "causal chain" would be "too long and [would have] too many weak links for a court to be able to find that the defendants' conduct harmed the plaintiff[] at all, let alone in an amount that could be estimated without the wildest speculation." *Id.* at 759.

In short, the complaint alleges a generalized grievance seeking to hold those who participated in the institution of slavery accountable for its harms. That does not satisfy the "irreducible constitutional minimum" requirement that a plaintiff have suffered a concrete and particularized injury. *Lujan*, 504 U.S. at 560. *See also Cato v. United States*, 70 F.3d 1103, 1109-10 (9th Cir. 1995) (citing *Allen v. Wright*, 468 U.S. 737, 755 (1984)) (finding that plaintiff lacked "standing to litigate claims based on the stigmatizing injury to all African Americans caused by racial discrimination" and the legacy of slavery); *Patterson*, 1995 WL 714372, at *2 (general failure of the United States "to eradicate racism and to ensure that African-Americans are treated equally" under the Fourteenth Amendment was insufficient to confer standing upon plaintiff who had "not alleged any specific or individualized injury to himself").

Accordingly, the motions to dismiss for lack of subject-matter jurisdiction will be granted.

## IV.     Conclusion

For the foregoing reasons, the motions of the Commonwealth of Massachusetts and the City of Boston to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) are GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: April 11, 2023